SAVE THE VALLEY, INC., Plaintiff,

v.

William D. RUCKELSHAUS, as Administrator, Environmental Protection Agency, Defendant,

and

Louisville Gas and Electric Company, Intervenor-Defendant.

Civ. A. No. 80–0930.

United States District Court, District of Columbia.

May 31, 1983.

J. Gordon Arbuckle, John L. Oberdorfer, Duane A. Siler, Patton, Boggs & Blow, Washington, D.C., for plaintiff.

Bethami Auerbach, E.P.A., Michael B. Barr, Nancy Marvel, Pollution Control Sec., Land & Nat. Resources Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN GARRETT PENN, District Judge.

Plaintiff, Save the Valley, Inc., is a non-profit corporation "organized to protect and improve the environment of the Ohio River Valley between Lawrenceberg, Indiana and Louisville, Kentucky." Complaint ¶ 1. Plaintiff filed this citizen suit pursuant to § 304(a)(2) of the Clean Air Act (the Act), as amended, 42 U.S.C. § 7604(a)(2), against Douglas Costle, then Administrator of the

Environmental Protection Agency (EPA),[1] seeking an order requiring him to perform his duty under § 167 of the Act, 42 U.S.C. § 7477, to prevent the construction of three coal-fired steam electric generating units by the Louisville Gas and Electric Company (LG & E), defendant-intervenor, at Wise's Landing, Kentucky.

The generating units in dispute, Units 2, 3, and 4 of the Trimble County Generating Station, as well as the unit not in dispute, Unit 1 of the same Generating Station, are each a major source of air pollution for which a preconstruction permit is required. *See* 42 U.S.C. § 7475 and 40 C.F.R. § 52.21. Permits were issued for all of the units on April 19, 1977, but the permits for Units 2, 3 and 4 were later determined to be invalid.[2]

This action was engendered by construction by LG & E which allegedly goes beyond the scope of the permit issued for Unit 1. First, LG & E has excavated, filled and recompacted the base pad area for all four units. Second, LG & E's plans call for the installation of part of the recirculating water line for Unit 2 at the same time the line for Unit 1 is installed. Third, since many of the structures necessary for Unit 1 will also serve the other units, LG & E contemplates building those structures in a manner that will facilitate all the units. For instance, common areas such as the coal storage area and the loading dock will be built to accommodate the needs of full capacity operation. Also, because one cooling tower will serve Units 1 and 2 LG & E intends to construct a "blowdown line" sized to serve both units.

▇ This Court has jurisdiction to hear citizen suits charging the EPA Administrator with failure to perform a non-discretionary duty. *Mountain States Legal Foundation v. Costle,* 630 F.2d 754, 766 (10th Cir. 1980), *cert. denied,* 450 U.S. 1050, 101 S.Ct. 1770, 68 L.Ed.2d 246 (1981). Section 167 of

the Act states that the Administrator shall prevent construction if, *inter alia,* no preconstruction permit has been obtained.

Plaintiff asserts that all of the construction described above is unauthorized. Defendants contend that the construction is proper for one or all of the following reasons: (1) sound engineering and safety practices dictate construction of certain parts of Units 2, 3, and 4 at the same time as Unit 1; (2) certain areas are common areas which will serve all of the units; or (3) the construction on Units 2, 3 and 4 is not aimed at completing those units.

▇ The Court finds that this dispute does not warrant complex or subtle statutory analysis. Where a statute is unambiguous on its face it should ordinarily be accorded its plain and obvious meaning. *Citizens to Save Spencer Valley v. EPA,* 195 U.S.App.D.C. 30, 56 & n. 117, 600 F.2d 844, 870 & n. 117 (1979).

▇ Section 165 of the Act, 42 U.S.C. § 7475, provides that the owner or operator of a facility seeking a permit must demonstrate "that emissions from *construction or operation* of such facility will not cause, or contribute to, air pollution . . . ." 42 U.S.C. § 7475(a)(3) (emphasis added). Thus, the fact that construction is not aimed at completing a unit does not obviate the need for preconstruction review as the EPA must consider the pollution resulting from the construction itself.

Pursuant to the plain language of the statute, and its obvious intent to regulate pollution attendant to construction as well as the operation of the finished generating units, the Court concludes that the Administrator must prevent any construction not specifically presented and approved during the permit process. This is the only reading of the statute that will effect its manifest purpose. For example, while the permit for Unit 1 may have approved the construction of a recirculating water line for that unit,

---

1. William D. Ruckelshaus has been substituted as the defendant pursuant to Fed.R.Civ.P. 25(d)(1).

2. Subsequently, the State of Kentucky issued a new permit for Unit 2. EPA has not decided the validity of that permit. Thus, for purposes of this case there is no currently valid construction permit for Unit 2.

and prudent engineering practice may call for the installation of a similar line for Unit 2 at the same time, if the EPA did not have the opportunity to consider the cumulative impact of the additional construction resulting from the second line, then the pollution control aims of the statute have not been protected.[3] On the other hand, if a common structure, such as a loading dock, is necessary for the operation of Unit 1, construction is not proscribed simply because the common area will also be used by the other units. Of course, if the common structure requires more construction because it will be used by more than one unit, then that fact should be presented to the EPA in the permit application.

An appropriate Order shall issue.

---

**3.** Moreover, if the operator plans to install both lines at the same time, there is little burden in requiring it to present such plan to the EPA.